

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SANDRA CORTEZ, | ) | Case No. CV 13-0499-JPR |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER AFFIRMING COMMISSIONER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed December 30, 2013, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

## II.  BACKGROUND

Plaintiff was born on May 6, 1963. (Administrative Record ("AR") 47.) She completed high school (AR 49) and worked as a temporary full-time employee, including as a post-office clerk and an assembly worker (see AR 76-77).

Plaintiff filed applications for DIB and SSI on July 6 and December 28, 2007, respectively. (See AR 112.) In an opinion dated June 29, 2009, an ALJ determined that although Plaintiff had severe impairments of obesity, neck and back degeneration, sleep apnea, and asthma and mild impairments of kidney stones, headaches, ovarian cysts, and gastroesophageal reflux disease ("GERD"), she was not disabled. (AR 110-16.) On November 2, 2010, the Appeals Council denied Plaintiff's request for review (AR 121-24), and this Court affirmed that ruling on January 27, 2012, see Cortez v. Astrue, CV 10-9613 JPR, 2012 WL 253961 (C.D. Cal. Jan. 27, 2012).

On August 25, 2009, Plaintiff again filed applications for DIB and SSI. (See AR 210-17.) She alleged that she had been unable to work since June 25, 2009, because of gastroesophageal erosion, chronic muscular and skeletal pain, asthma, and depression. (AR 231.) After her applications were denied initially and upon reconsideration, she requested a hearing before an ALJ. (AR 143-44.) A hearing was held on June 8, 2011, at which Plaintiff, who was represented by counsel, appeared and testified. (AR 82-106.) Because the ALJ found no evidence supporting the alleged severity of Plaintiff's back problems and arthritis, she scheduled an exam by a state-agency consultant. (AR 100.) A second hearing was held on August 31, 2011, at which

2

1  Plaintiff, who was still represented by counsel, appeared and
2  testified, as did a vocational expert ("VE").  (AR 44-81.)  In a
3  written decision issued October 14, 2011, the ALJ determined that
4  Plaintiff was not disabled.  (AR 27-38.)  On January 29, 2013,
5  the Appeals Council denied her request for review.  (AR 1-3.)
6  This action followed.

7  **III. STANDARD OF REVIEW**

8       Under 42 U.S.C. § 405(g), a district court may review the
9  Commissioner's decision to deny benefits.  The ALJ's findings and
10 decision should be upheld if they are free of legal error and
11 supported by substantial evidence based on the record as a whole.
12 Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420,
13 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746
14 (9th Cir. 2007).  Substantial evidence means such evidence as a
15 reasonable person might accept as adequate to support a
16 conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue,
17 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla
18 but less than a preponderance.  Lingenfelter, 504 F.3d at 1035
19 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
20 2006)).  To determine whether substantial evidence supports a
21 finding, the reviewing court "must review the administrative
22 record as a whole, weighing both the evidence that supports and
23 the evidence that detracts from the Commissioner's conclusion."
24 Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the
25 evidence can reasonably support either affirming or reversing,"
26 the reviewing court "may not substitute its judgment" for that of
27 the Commissioner.  Id. at 720-21.
28

3

IV.   **THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.   42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively

presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from the alleged onset date, June 25, 2009.[2]  (AR 29.)  At step two, she concluded that

---

[1]   RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   This was four days before the prior ALJ's unfavorable decision, on June 29, 2009.  (AR 110-16.)

Plaintiff had severe impairments of fibromyalgia, sleep apnea, hypertension, hearing loss, and asthma.  (Id.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing.  (AR 31.)  At step four, she found that Plaintiff retained the RFC to perform a limited range of "light work."  (AR 31-31.)  Based upon the VE's testimony, the ALJ determined that Plaintiff could still perform her past relevant work as a post-office clerk and assembly worker.  (AR 36.)  Plaintiff does not challenge any of these findings except the last.

## V.   RELEVANT FACTS

At the initial June 8, 2011 hearing, the ALJ noted the absence in the record of evidence of a medical provider's restrictions on work, a fibromyalgia diagnosis, severe back pain, or severe arthritis.  She therefore scheduled a consultative examination by an orthopedic specialist and continued the hearing.  (AR 100-01.)

At the August 31, 2011 hearing, the ALJ presented the VE with a hypothetical concerning a 46-year-old with a high-school education and Plaintiff's past relevant work experience who could lift 20 pounds occasionally and 10 frequently; could stand and walk for six hours and sit for six hours in an eight-hour workday; needed to "alternate positions at hour intervals for one to three minutes at the workstation"; could occasionally climb ramps and stairs but not ladders, ropes, or scaffolds; could occasionally reach overhead; could frequently use hands for fine/gross manipulation; had to avoid extreme cold, unprotected heights, dangerous moving machinery, concentrated exposures to

pulmonary irritants, and very loud noise; and was able to hear and carry out instructions at a conversational level.  (AR 77-79.)

The VE testified that such a person could perform Plaintiff's past relevant work as an assembly worker, both as actually and generally performed, and post-office clerk, only as generally performed.  (AR 79.)  The VE further explained that Plaintiff's other past relevant work "would not allow . . . the sit/stand option that [the ALJ] mentioned, even at one to three minutes."  (Id.)  Plaintiff's attorney did not ask the VE any questions concerning the overhead reaching required by the two jobs or the sit/stand option, despite being given the opportunity to do so.  (AR 80.)

The ALJ determined that Plaintiff retained the RFC to perform a limited range of "light work."[3]  Specifically, the ALJ found that

> the claimant can occasionally lift and carry twenty
> pounds and frequently lift and carry ten pounds; she can
> stand and walk for a total of six hours in an eight-hour
> workday and sit for a total of six hours in an eight-hour
> workday; she needs to alternate positions at hour

---

[3]    "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.  "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  Id.

intervals for one to three minutes at the workstation; she can occasionally climb ramps and stairs; she is to avoid climbing ladders, ropes, and scaffolds; she can occasionally reach overhead with upper extremities; she can frequently use hands for fine/gross manipulation; she is to avoid exposures to extreme cold, unprotected heights, and dangerous moving machinery; she is to avoid concentrated exposures to pulmonary irritants, such as dusts, fumes, gases and odors; she is to avoid very loud noise (as defined in the DOT), such as jack hammer operations and rock concert sitting in front row, but she is able to understand, hear, and carryout [sic] instructions at conversational level.

(AR 31.)

Although the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were "less than fully credible." (AR 33.) The ALJ noted that Plaintiff's daily activities included driving, cooking, and shopping and found that this "somewhat normal level of daily activity" required many of the same physical and mental capabilities and social interactions as regular employment. (Id.)

The ALJ found that the record reflected "routine, conservative and non-emergency treatment." (Id.) She noted that imaging exams, including of Plaintiff's head and cervical spine, had been unremarkable. (AR 34.) The ALJ noted that although Plaintiff had visited the emergency room, she had been discharged

in stable condition and prescribed medication.  (AR 34.)

The ALJ noted that consulting orthopedic surgeon Dr. Ibrahim Yashruti, after examining Plaintiff, opined that she could lift 100 pounds occasionally and 50 pounds frequently and had no other functional limitations.  (AR 34.)  Consulting neurologist Dr. Sarah Maze opined that Plaintiff, whom she had examined, had good strength, coordination, and gait functioning and no functional limitations.  (Id.)  The ALJ noted that Plaintiff's July 20, 2011 general exam at Fontana Family Medical Center was also normal. (Id.)

The ALJ found that Plaintiff's recent visits to the McKee Clinic, her treating medical practitioners, reflected "no significant abnormalities, functional limitations, or diagnoses, as either the conditions mentioned were stable and/or well controlled."  (AR 35.)  She noted that most of the McKee treatment notes were made by a nurse practitioner, not a licensed medical doctor.  (Id.)  In particular, she noted that Plaintiff's fibromyalgia diagnosis was made by a nurse practitioner, not a medical specialist, and was not supported by positive trigger-point signs.  (Id.)  The ALJ further noted evidence that any fibromyalgia was controlled by Plaintiff's medications and was stable.  (Id.)  The ALJ emphasized that although Plaintiff alleged significant back, shoulder, head, neck, and leg pain, the record contained no "significant images," "x-ray abnormalities," or "symptoms" to support an RFC more limited than that assessed. (Id.)

The ALJ noted a lack of "longitudinal evidence" to substantiate Plaintiff's alleged hypertension, fibromyalgia,

asthma, sleep apnea, and hearing loss. (Id.) The ALJ emphasized Plaintiff's history of "going from doctor to doctor, alleging . . . pain" while "all lab results and tests were within normal limits." (Id.) The ALJ further found that ailments of which Plaintiff complained were reported to be stable, controlled by medication, and not continuous over a period of 12 months. (Id.)

The ALJ gave great weight to the opinions of Drs. Yashruti and Maze, finding their RFC assessments reasonable and consistent with the evidence (id.); Plaintiff does not challenge those findings.

Based on the testimony of the VE, the ALJ found that Plaintiff could still perform her past relevant work as a post-office clerk, DOT 243.367-014, 1991 WL 672266, as generally performed, and assembly worker, DOT 739.687-030, 1991 WL 680180, both as generally and actually performed. (AR 36-37.) The ALJ found the VE's testimony to be consistent with the DOT (AR 37), although she had not asked at the hearing if it was (see AR 76-80).

The ALJ therefore found that Plaintiff was not disabled. (AR 37.)

In Plaintiff's appeal to the Appeals Council, she argued primarily that the ALJ had erred in discounting her credibility. (AR 304-05.) In relation to her claim that the ALJ erred in finding she could perform some of her past relevant work, she did not identify in any way how the ALJ allegedly erred. Her entire argument consisted of the following:

Additionally, the ALJ has improperly determined that

Sandra Cortez can return to her past relevant work. The

limitations imposed by the ALJ in the residual capacity
assessment do not allow for the performance of the past
relevant work.   The past relevant work imposes greater
demands than that allowed by the limitations imposed by
the ALJ's residual functional capacity assessment.

(AR 305.)   She also did not submit any additional evidence to the
Appeals Council.   (See AR 4.)

## VI.  DISCUSSION

Plaintiff contends that the ALJ erred in failing to properly
consider her testimony regarding her pain and limitations and in
determining that she could perform some of her past relevant
work.  (J. Stip. at 5.)

A.   Any Error in Evaluating Plaintiff's Credibility Was
Harmless

1.  Applicable Law

An ALJ's assessment of pain severity and claimant
credibility is entitled to "great weight."  See Weetman v.
Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
believe every allegation of disabling pain, or else disability
benefits would be available for the asking, a result plainly
contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674
F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks
omitted).

In evaluating a claimant's subjective symptom testimony, the
ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d
at 1035-36.  "First, the ALJ must determine whether the claimant
has presented objective medical evidence of an underlying

11

impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).

Absent affirmative evidence of malingering, those findings must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

    2.   *Analysis*

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject her testimony. (J. Stip. at 18, 21.) Although the ALJ found Plaintiff's testimony "less than fully credible" (AR 33), she did not discount the testimony entirely; rather, giving Plaintiff the benefit of the doubt (AR 36), she found a more restrictive RFC than that offered by four medical providers who examined Plaintiff and three state-agency physicians who reviewed Plaintiff's file, despite the ALJ's finding that the doctors' RFCs were consistent with the medical evidence of record. Moreover, the ALJ detailed valid reasons for finding Plaintiff's testimony less than fully credible. (See AR

12

32-36.)

First, the ALJ found that Plaintiff's subjective symptom testimony was inconsistent with the medical evidence.  The ALJ noted the lack of diagnostic evidence of spinal, head, or joint impairments and normal imaging results (AR 34; see, e.g., AR 503, 505, 507, 591); indeed, at step two the ALJ did not find any related impairments, a finding Plaintiff does not challenge.  The ALJ further noted that Plaintiff's fibromyalgia diagnosis was similarly unsupported by diagnostic evidence and came from a nurse practitioner, who is not an acceptable medical source.  (AR 35); see §§ 404.1513(a), 416.913(a).  The ALJ also cited the opinions of both consulting examining physicians and state-agency doctors that Plaintiff was subject to little or no functional limitation.  (AR 34, 36; see AR 395, 398-99, 743, 749-51.)  The ALJ was entitled to rely on those opinions in assessing Plaintiff's credibility, having determined that they were consistent with the medical evidence of record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that examining physician's opinion "alone constitutes substantial evidence, because it rests on his own independent examination of [claimant]"); Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); §§ 404.1527(c)(4), 416.927(c)(4).  The ALJ properly relied on the lack of medical evidence supporting the alleged severity of Plaintiff's impairments in assessing her credibility.  See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th

Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); <u>Lingenfelter</u>, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

Plaintiff contends that "rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient" under <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  (J. Stip. at 21-22.)  Plaintiff misstates the law.  Although <u>Bunnell</u> confirmed that a claimant need not present medical evidence of the degree of pain, 947 F.2d at 347, it was still Plaintiff's burden to show not just severe but disabling impairments.  <u>See</u> <u>Drouin</u>, 966 F.2d at 1257.  She could not do so with symptom testimony alone but rather bore the burden of setting forth diagnostic and clinical findings of a disabling impairment.  20 C.F.R. §§ 404.1529(a), 416.929(a); <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).[36]

Indeed, while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the dearth of medical evidence to support disability is still a relevant factor in determining a claimant's credibility.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ

---

[36]   Further, given the denial of Plaintiff's prior applications for benefits, she was required to show changed circumstances to overcome the continuing presumption of nondisability.  <u>See</u> <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988).

can consider in his credibility analysis."); <u>Kennelly v. Astrue</u>, 313 F. App'x 977, 979 (9th Cir. 2009) (same).  Here, as explained below, the ALJ reasonably discounted Plaintiff's allegations of disabling pain based on other factors in addition to the contrary objective medical evidence and the opinions of several doctors that Plaintiff's limitations were mild at worst.

Indeed, the ALJ noted that Plaintiff had received largely routine, conservative, nonemergency treatment for her impairments (<u>see, e.g.</u>, AR 336-37, 414, 419, 564, 573, 578, 782; <u>see also</u> AR 659, 676, 692, 731) and that Plaintiff's complained-of ailments were largely stable and medically controlled (<u>see, e.g.</u>, AR 577, 583, 591, 595).  (AR 34-35.)  The record reflects that Plaintiff's practitioners treated her ailments primarily with medication, testing to rule out significant disorders, and monthly or less frequent follow-up visits.  (See, e.g., AR 758, 761, 763, 765, 784.)  Plaintiff's GERD and asthma were consistently deemed stable on medication (<u>see, e.g.</u>, AR 591, 595), and her blood pressure was well controlled (<u>see, e.g.</u>, AR 577, 595).  She attended a pain clinic for management of her back pain (<u>see</u> AR 591, 595) and reported that her pain medications were effective when she took them (<u>see, e.g.</u>, AR 582; <u>see also</u> AR 798).  Even when Plaintiff visited the emergency room with complaints of pain, she was treated with medication and discharged with instructions to follow up with her regular physician.[37]  (<u>See</u> AR 336-67.)  Evidence of such conservative

---

[37]   The hospital intake form from May 25, 2009, indicates that Plaintiff did not complain of any neck or back pain.  (AR 340.)  She did complain of an "ache" in her right leg, however.

treatment is a clear and convincing reason to discount a claimant's testimony of disabling pain.  See Parra, 481 F.3d at 751.[38]

The ALJ's findings were sufficiently specific to support her credibility determination, and her reasoning was clear and convincing and supported by substantial record evidence.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012).  Thus, this Court may not engage in second-guessing.  See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604.  In sum, the ALJ reasonably and properly discredited Plaintiff's subjective testimony regarding the severity of her symptoms as not being wholly credible.  Remand is not warranted on this basis.

_____

(Id.)  Similarly on October 12, 2008, she did not indicate any head or back pain, only chest pain.  (AR 351.)  On June 6, 2008, she also had no head or back pain.  (AR 358.)

[38]  The ALJ also found that Plaintiff's regular activities of daily living demanded a level of function that would translate to the workplace.  (AR 34.)  As Plaintiff argues at length (J. Stip. at 24-26), this finding is probably erroneous given Plaintiff's relatively limited activities of watching television, minimal housecleaning, watering the grass, and basic meal preparation.  (See AR 253, 255-56, 261, 263); see Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) (holding that ALJ erred in finding reading, watching television, and socializing to be consistent with light level of exertion and therefore discounting plaintiff's allegations of disabling pain).  Any error was harmless, however, given the ALJ's identification of other, valid grounds for discounting Plaintiff's credibility.  See Carmickle, 533 F.3d at 1162-63 (finding error harmless when ALJ cited other reasons to support credibility determination).  Plaintiff simply ignores the other reasons cited by the ALJ.

16

**B.   The ALJ Did Not Err in Finding that Plaintiff Could Perform Her Past Relevant Work**

Plaintiff contends that the VE's testimony that she could perform her past relevant work as a post-office clerk and an assembler conflicts with the DOT.  (J. Stip. at 10.)  She further contends that the ALJ erred in failing to inquire whether the testimony was consistent with the DOT (id. at 12) or elicit sufficient testimony from the VE to justify his deviations from it (id. at 14-15).  Plaintiff thus asserts that the ALJ's reliance on the VE's testimony was improper and requires reversal.  (Id. at 12, 15.)

1.   *Applicable Law*

At step four, the claimant has the burden of showing that she can no longer perform her past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing §§ 404.1520(e), 416.920(e)).  She "has the burden of proving an inability to return to [her] former *type* of work and not just to [her] former job."  Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986).

Although the burden lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support her conclusion.  Pinto, 249 F.3d at 844 (citing SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)).  "This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past relevant work."  Id. at 844-45 (internal quotation marks omitted); see also §§ 404.1520(f), 416.920(f).  If the ALJ properly determines that the claimant can perform either the actual functional demands and job duties of a

17

particular past relevant job or the job as generally performed in the national economy, the claimant is not disabled. <u>Pinto</u>, 249 F.3d at 845; §§ 404.1520(f), 416.920(f).

In the context of a step-five determination, when a VE relies on a functional limitation about which the DOT is silent or unclear, a conflict may exist. <u>See Massachi v. Astrue</u>, 486 F.3d 1149, 1152 (9th Cir. 2007); <u>Buckner-Larkin v. Astrue</u>, 450 F. App'x 626, 628-29 (9th Cir. 2011). Here, by contrast, the testimony at issue concerns the step-four analysis of Plaintiff's ability to do her past relevant work. (<u>See</u> AR 36-37.) The difference is significant: at step four, it is Plaintiff's burden to show that she cannot perform her past work, whereas at step five, the burden is the Commissioner's. <u>See Drouin</u>, 966 F.2d at 1257; <u>Pinto</u>, 249 F.3d at 844. Courts have found at step four that no conflict with the DOT existed when the DOT job description did not include a provision that was actually incompatible with the RFC the VE relied on but rather was simply silent or unclear as to one of the RFC's limitations. <u>See, e.g.</u>, <u>Leon v. Astrue</u>, 830 F. Supp. 2d 844, 849-50 (C.D. Cal. 2011); <u>Megliorino v. Astrue</u>, No. CV 11-07895 SS, 2012 WL 2847705, at *10-11 (C.D. Cal. July 10, 2012); <u>Alarcon v. Astrue</u>, No. 12-CV-1719-IEG (MDD), 2013 WL 1315968, at *3-5 (S.D. Cal. Mar. 28, 2013).

Indeed, courts have rejected claims based on conflict — even at step five — when a DOT description does not, on its face, conflict with the claimant's RFC if the VE's testimony or the tasks described by the DOT confirm that the job would accommodate the claimant's limitations. <u>See, e.g.</u>, <u>Guevara v. Colvin</u>, No. CV

1  12-01988 AGR, 2013 WL 1294388, at *7-8 (C.D. Cal. Mar. 28, 2013);

2  Huerta v. Astrue, No. EDCV 11-1868-MLG, 2012 WL 2865898, at *2

3  (C.D. Cal. July 12, 2012); McBride v. Comm'r of Soc. Sec., No.

4  2:12-CV-0948-CMK, 2014 WL 788685, at *8 (E.D. Cal. Feb. 25,

5  2014).

6           2.  Sit/Stand Option

7       The ALJ found that Plaintiff "needs to be able to alternate

8  positions at hour intervals for one to three minutes at the

9  workstation." (AR 31.)  Plaintiff notes that although her RFC

10 mandates "a sit/stand option during the workday for one to three

11 minutes every hour" (J. Stip. at 10 (citing AR 31-32)), the DOT

12 descriptions of the post-office-clerk and assembly-worker jobs,

13 see DOT 243.367-014, 1991 WL 672266; DOT 739.687-030, 1991 WL

14 680180, are silent as to sit/stand options, and she argues that

15 such silence constitutes a conflict (J. Stip. at 10-11).  The

16 Court agrees with the reasoning of those courts that have found -

17 at least in the context of step four - that such silence does not

18 constitute a conflict.

19      But even if there was a conflict, the VE explicitly

20 indicated to the ALJ that he had considered Plaintiff's sit/stand

21 requirement in evaluating her past work.  He noted that

22 Plaintiff's past work as post-office clerk and assembler were the

23 only past relevant jobs that would permit her to alternate

24 position for one to three minutes each hour.  (AR 79 ("The others

25 would . . . not allow . . . the sit/stand that you mentioned,

26 even at one to three minutes.").)  Thus, the VE clearly evaluated

27 the sit/stand option when determining which of Plaintiff's past

28 relevant work she could perform.

1    Plaintiff is correct that when a VE testifies about the
2    requirements of a job, the ALJ has a responsibility to ask about
3    "any possible conflict" between that evidence and the DOT.  <u>See</u>
4    SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); <u>Massachi</u>, 486
5    F.3d at 1152-53 (holding that application of SSR 00-4p is
6    mandatory).  Here, the ALJ did not do so.  But an ALJ's failure
7    in this regard is harmless if no actual conflict existed or the
8    VE provided sufficient evidence to support the conclusion.
9    <u>Massachi</u>, 486 F.3d at 1154 n.19; <u>cf.</u> <u>Flores v. Colvin</u>, 546 F.
10   App'x 638, 640-41 (9th Cir. 2013) (finding ALJ's failure to
11   inquire whether positions conflicted with DOT harmless error when
12   VE testified that his testimony was limited to positions with
13   sit/stand option).  Here, both things are true.
14       Further, although it was Plaintiff's burden to establish
15   that she could not do her past relevant work, her counsel neither
16   challenged the VE's testimony nor sought clarification when he
17   examined him.  (<u>See</u> AR 80); <u>cf.</u> <u>Solorzano v. Astrue</u>, No. ED CV
18   11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012)
19   (rejecting contention that "apparent conflicts" existed between
20   VE's testimony and DOT when Plaintiff's counsel failed to
21   question the VE at the hearing about any alleged conflicts or
22   request the ALJ do so); <u>Carrillo v. Astrue</u>, No. CV 12-00282-JEM,
23   2012 WL 4107824, at *5-6 (C.D. Cal. Sept. 18, 2012) (rejecting
24   challenge to step-four finding when there was no apparent
25   conflict and counsel raised no conflict with the DOT when given
26   opportunity to question VE).  "Counsel are not supposed to be
27   potted plants at administrative hearings" but rather "have an
28   obligation to take an active role and to raise issues that may

impact the ALJ's decision while the hearing is proceeding so that they can be addressed." Solorzano, 2012 WL 84527, at *6. The ALJ was entitled to rely on the VE's uncontradicted explanation. Remand is not warranted on this issue.

3.   *Occasional Overhead Reaching*

Plaintiff further contends that although her RFC provided that "she can occasionally reach overhead with upper extremities" (AR 31-32), the positions identified by the VE require frequent (post-office clerk) or constant (assembler) reaching and are therefore inconsistent with the demands of her RFC (J. Stip. at 13).[39]   Plaintiff asserts that because reaching is defined in the DOT as "extending the hands and arms in any direction," SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985), it necessarily includes overhead reaching and thus "[t]he above shoulder level reaching demands as described in the DOT" are incompatible with Plaintiff's RFC.   (J. Stip. at 13.)

Again, all but one of the cases Plaintiff cites to argue that remand is warranted concern step-five analysis. See Massachi, 486 F.3d at 1152; Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006); Mkhitaryan v. Astrue, CV 09-6971-SH, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010); Bermudez v. Astrue, CV 09-08370 AGR, 2011 WL 997290, at *2 (C.D. Cal. Mar. 21, 2011). Here, however, Plaintiff bore the burden of demonstrating that she was unable to perform her past relevant work. Drouin, 966

---

[39]   Occasional, as defined by the Social Security Administration, means "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Frequent means from one-third to two-thirds of the time. Id. at *6.   Constant means two-thirds or more of the time. See, e.g., DOT 739.687-030, 1991 WL 680180.

1    F.2d at 1257; <u>Pinto</u>, 249 F.3d at 844.

2        Moreover, once again, no actual conflict existed.

3 The ALJ did not preclude Plaintiff from overhead reaching but

4 rather restricted her to only occasional overhead reaching, and

5 she did not place any limits on Plaintiff's ability to do other

6 kinds of reaching.  The DOT is silent on just how much of the

7 "reaching" required by the post-office-clerk and assembly-worker

8 jobs must be overhead.  Presumably, it is some smaller subset of

9 "frequent" or "constant" or the DOT would simply have noted that

10 frequent or constant <u>overhead</u> reaching was required.  Indeed, of

11 the tasks indicated in each position's DOT description, very few

12 appear to involve overhead reaching.  <u>See</u> DOT 243.367-014, 1991

13 WL 672266 (describing post-office clerk's tasks as selling postal

14 products, issuing money orders, registering and insuring mail,

15 computing mailing costs, sorting mail into pigeonholes or bags,

16 examining mail for proper postage, canceling mail using stamp or

17 machine, weighing mail on scale, recording daily transactions,

18 processing complaints, answering questions, posting circulars on

19 bulletin board, and otherwise assisting the public); DOT 739.687-

20 030, 1991 WL 680180 (describing assembly worker's tasks as

21 positioning parts to be assembled in specified relationship to

22 each other using hands, tweezers, or tongs; bolting, screwing,

23 clipping, cementing, or otherwise fastening parts together by

24 hand using tools or bench machines; and performing fastening,

25 force-fitting, or light cutting operations using machines such as

26 arbor presses, punch presses, taps, spot-welding or riveters).

27 These descriptions are not, therefore, inconsistent on their face

28 with the ALJ's RFC finding.  <u>Cf.</u> <u>Huerta</u>, 2012 WL 2865898, at *2

(absent indication that tasks identified in DOT could not be performed sitting down or while maintaining comfortable head position, DOT description was not inconsistent with RFC, which permitted "some mobility" and required only that claimant be able to switch neck positions every 15 to 30 minutes).[40]

Once again, Plaintiff's counsel, despite his client's burden to establish that she could not do her past jobs, did not raise the issue of overhead reaching with the ALJ, the VE, or the Appeals Council. (See AR 80, 305); cf. Solorzano, 2012 WL 84527, at *6; Carrillo, 2012 WL 4107824, at *5; Villa, 797 F.2d at 798 (noting that "[t]he claimant has the burden of proving an inability to return to his former *type* of work and not just to his former job"). The ALJ was therefore entitled to rely on the VE's uncontradicted explanation. See Bayliss, 427 F.3d at 1218.

Giles v. Colvin, CV 12-9501 MRW, 2013 WL 4832723 (C.D. Cal. Sept. 10, 2013), upon which Plaintiff relies (J. Stip. at 14), is distinguishable. In Giles as here, the claimant was limited to occasional overhead reaching. But whereas in Giles the one past relevant job the VE testified that the plaintiff could perform required constant reaching, 2013 WL 4832723, at *3, here at least one of Plaintiff's past jobs - that of post-office clerk - required only frequent reaching. A job that demands "frequent" overall reaching can reasonably be expected to require significantly less overhead reaching, and both the DOT

---

[40]   Given Plaintiff's RFC, the concern raised by these descriptions is the handwork required, about which the ALJ specifically questioned the VE, who confirmed that the two identified jobs would accommodate Plaintiff's limitations. (AR 80.)

description and the VE's testimony indicate that a post-office clerk need only engage in "occasional" overhead reaching, the next lowest subset of the overall "frequent" reaching required.

To the extent <u>Giles</u> is incompatible with this Court's ruling, it is nonbinding authority and the Court declines to follow it. Although the ALJ has a duty to make all required factual findings, none are needed when no actual conflict with the DOT exists – and certainly not at step four when a claimant represented by counsel fails to identify any alleged conflict or develop the record concerning it, either before the ALJ or the Appeals Council.

Remand is not warranted.

## VII. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[41] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 30, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[41] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."